UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD WILSON,

       Petitioner,                                 Case No. 09-14787
                                               Honorable Thomas L. Ludington

v.

MARY BERGHUIS,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Gerald Wilson, presently confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree criminal sexual conduct in violation of Mich. Comp. Laws 750.520b(1)(f). For the reasons stated below, the application for a writ of habeas corpus will be denied.

### I

Petitioner was convicted of first-degree criminal sexual conduct following a jury trial in the Oakland County Circuit Court. He was sentenced as a second habitual offender to twenty to forty years' imprisonment.

At Petitioner's trial, the victim, Sandra Bradford, testified that in February 2005 she was living in an efficiency apartment in Pontiac with Petitioner. At that time, they had lived there for about two months and had been dating for about eight. On February 7, 2005, Bradford was away

from the apartment visiting her mother, her daughter, and her new granddaughter. She spoke with Petitioner on the phone and told him that she would be home later that night.

When Bradford returned home, Petitioner was away, so she ate, bathed, and went to bed. Petitioner arrived at some point during the night, and he woke Bradford at about 4:00 a.m. He began to argue with her about money. Bradford was on the bed with her back to Petitioner, but he suddenly jumped on her, choked her, bit her lip, and punched her in the face. Petitioner then got up, exited the apartment into the hallway, and began to dance and gloat. Bradford tried to escape, but Petitioner caught her and choked her; she said she tried to scream but he covered her mouth. Bradford believed Petitioner was under the influence of marijuana, because "that's what he did," but she did not believe he had been drinking.

Bradford testified that at that moment she blacked out. She awoke in the bathroom to find Petitioner running water over her. He then ripped her clothes off, pushed her into bed, and forced sexual intercourse. Bradford described several injuries she alleged were caused while she attempted to resist. After Petitioner stopped intercourse, he held Bradford in a leg-hold on the bed, and she could not get up. Finally, Petitioner released Bradford around 7:30 a.m. because her mother was due to take her grocery shopping. Petitioner was worried about what Bradford would tell her mother, because Bradford's face was splotchy and swollen and her lip was cut.

Bradford's mother arrived but remained in her vehicle blaring the horn. Bradford left the apartment, telling Petitioner he had twenty-five minutes to get out of her house. Petitioner told her he was not going anywhere. Bradford then got into her mother's car and told her mother that Petitioner had attacked her, but she did not reveal that she had been sexually assaulted. Bradford then called her brother and the police. She wanted her brother to come and get Petitioner out of the house.

- 2 -

Bradford's brother was in the parking lot of the apartment when Bradford and her mother got back from the store.  Bradford did not tell her brother that she had been sexually assaulted because she was afraid if she did he would kill Petitioner.  Nevertheless, he saw Bradford, he became very upset, went into the house, and demanded the keys to the apartment from Petitioner.  But Petitioner refused to give them up and said the house was his.  A fight ensued, Bradford's brother punched Petitioner in the face, and then forced him out of the apartment.

Bradford's brother then left just before the police arrived.  Bradford told Officer Darnell Reed that she had been jumped on by Petitioner.  She agreed to go to the hospital because the injuries on her neck were bad.  On the way to the hospital, Bradford told the officer that she had also been sexually assaulted.  Bradford was first taken to Pontiac hospital, but there was no rape kit there so Officer Reed took her to the rape center at Royal Oak Hospital.  Bradford had an examination at the hospital, and then went to the police station for more pictures.  Photographs taken of Bradford by the police were admitted into evidence during Petitioner's trial.

Bradford testified Petitioner called her at her mother's house five times on Valentine's Day.  A recording of these calls was played for the jury, and a transcript was provided to assist them in following along but was not admitted into evidence.  Bradford identified the voices on the first tape as herself and Petitioner, and Petitioner stipulated that the remaining tapes were the following four calls.

Pontiac Police Officer Darnell Reed testified that he arrived at 101 Mechanic, Apartment 110 on February 8 at about 9:40 in the morning and encountered Bradford and her mother.  According to Officer Reed, Bradford was very upset, had a swollen lip with blood around it, obvious scratches, and bruises on her neck.  Reed spent approximately twenty minutes at the apartment talking with Bradford.  According to Reed, at the apartment Bradford told him that she

- 3 -

had been assaulted by her boyfriend, but did not indicate that she had been raped.  He testified that during the three minute drive to the hospital, Bradford then told him she had been raped. Reed returned to the apartment to look for evidence to verify the allegations, and then took Bradford to the START Program in Royal Oak.  The START Program is where police take possible rape victims for forensic examinations and in-depth interviews.  At some point during his investigation, Reed spoke to three of Bradford's neighbors, at least one of which refused to identify herself, and got information regarding whether they were aware of any disturbance the night before.  Reed was unable to find any torn underwear in the apartment.

Bonnie Barton, the program director at the START Program, a forensic nurse examiner, testified that she examined Bradford.  According to Barton, Bradford was distraught and crying. She had a curved abrasion on her upper lip, an abrasion on her left inner arm, three "ligature-type" marks on her neck, bruising across both breasts, an abrasion on her right inner thigh, abrasions on each shoulder blade, and a round, red abrasion on the center of her back.  Barton took photographs of these injuries, which were admitted into evidence.  There were no marks on Bradford's face consistent with being struck by a fist.  The pelvic examination revealed no evidence of injury, which Barton testified was typical of an adult female victim of sexual assault. Barton testified that Bradford answered "yes" when asked whether she had consensual sex within the previous 96 hours.

Pontiac Detective Doug MacQuarrie testified that he interviewed Petitioner on February 8, 2005.  MacQuarrie said Petitioner initially denied that there had been a fight with Bradford, but then admitted there had been an argument, and informed the detective that Bradford had been injured only as he attempted to keep her at bay.  Petitioner denied hitting, slapping, or choking

Bradford. Petitioner told MacQuarrie that he and Bradford argued, but then had consensual "make up" sex. Petitioner did not testify and was convicted as charged.

Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following claims: A) his Sixth and Fourteenth Amendment rights to a fair trial and due process of law were denied through prosecutorial misconduct — improper argument to the jury — and B) ineffective assistance of counsel because of counsel's failure to object during the trial.

Petitioner's conviction was affirmed on appeal in an unpublished, per curiam opinion. *See People v. Wilson*, No. 265455, 2007 WL 521248 (Mich. Ct. App. Feb. 20, 2007). Petitioner did not seek leave to appeal from the Michigan Supreme Court. (*See* Affidavit of Michigan Supreme Court Clerk Corbin R. Davis).

On March 17, 2007, Petitioner returned to the trial court and filed a motion for relief from judgment, raising the same issues he now raises in his habeas petition. The trial court denied Petitioner's motion on August 20, 2007. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied on December 9, 2008. His application for leave to appeal filed with the Michigan Supreme Court was denied on September 11, 2009.

Petitioner now seeks habeas corpus relief in this Court on the following grounds:

I.    The prosecution failed to prove the venue of the offense was in Oakland County.

II.   Denial of public trial.

III.  Prosecution's refusal to provide defense with requested photos resulted in a denial of due process.

IV.   The prosecution calling a surprise witnesses, without endorsing the witnesses or asking leave to endorse the witnesses, deprived Petitioner of a fair trial.

V.    The trial court denied Petitioner due process by admitting insufficiently authenticated and inaudible tape recordings.

VI.     Prosecution's failure to list *res gestae* witnesses denied Petitioner due process.

VII.    Prosecution's questions regarding Petitioner's illegal drug use denied Petitioner a fair trial and coerced him to waive his right to testify at trial.

VIII.   Denial of right to counsel due to late appointment of counsel and counsel's ineffectiveness at trial.

IX.     Cumulative errors.

X.      Ineffective assistance of appellate counsel.

Respondent Mary Berghuis contends that all of Petitioner's habeas claims are procedurally defaulted and also lack merit. Upon review of the entire record, the Court finds that Petitioner has not demonstrated a right to habeas relief. His petition will be denied.

## II

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

**III**

Respondent argues that Petitioner's habeas claims are all procedurally defaulted because Petitioner failed to raise those claims on direct appeal, and has not established either cause to excuse the default or actual prejudice. Petitioner responds that his appellate attorney's failure to raise his habeas claims on direct appeal was constitutionally ineffective assistance of counsel, and that this should excuse any procedural default.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice from the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). Such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner asserts that his appellate attorney was ineffective for failing to raise his habeas claims on direct appeal, and that this constitutes cause to excuse his procedural default. Attorney error can constitute cause to excuse a procedural default only if it rises to the level of constitutionally ineffective assistance of counsel under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Analyzing whether an

attorney's failure to raise or preserve claims constitutes ineffective assistance requires an analysis of the merits of the claims a petitioner asserts should have been, but were not, raised or preserved. While the procedural default doctrine precludes habeas relief on a defaulted claim, it is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997). Judicial economy sometimes counsels reaching the merits of a claim or claims if the merits are "easily resolvable against the habeas petitioner, whereas the procedural-bar issues involve complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Accordingly, the Court will proceed directly to the consideration of the merits of Petitioner's various habeas claims. *See Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (*Lambrix* permits courts to skip procedural default issues and reject claims on the merits where the merits present more straightforward grounds for decision).

## A

Petitioner first contends that reversal is required because the prosecution failed to establish that the underlying offense occurred in Oakland County. During the trial, the victim testified that the crime occurred at her apartment in Pontiac; however, there was no testimony establishing that Pontiac was within Oakland County, Michigan. Petitioner argues that he is entitled to habeas relief because the prosecution did not establish venue beyond a reasonable doubt. Respondent argues that this claim is solely a claim of Michigan law, and therefore non-cognizable on habeas review, and is without merit even as a matter of state law.

Respondent is correct that the claim is non-cognizable. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.1978) (claim of improper venue not cognizable on habeas). While the "vicinage" clause of the Sixth Amendment to the United States Constitution guarantees the right to be tried by a jury of the district in which the crime has been committed, this right only applies

to federal criminal trials and the Fourteenth Amendment did not extend the vicinage clause to state criminal trials. *Caudill v. Scott*, 857 F.2d 344, 345–46 (6th Cir. 1988); *accord Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004). Even in a federal criminal trial, failure to establish venue is not grounds for federal habeas relief, because, "in the absence of any allegation of bad faith on the part of the Government or prejudice to the defendant, improper venue will not ordinarily result in a 'miscarriage of justice,' and presents no extraordinary need for post-conviction relief." *Williams*, 582 F.2d at 1042.

To the extent that Petitioner is arguing that Michigan law creates an obligation on the part of the prosecutor to establish venue, such a claim is also non-cognizable in this habeas proceeding. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). It is well established that the federal court cannot issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner has not established that his federal constitutional rights were violated by any failure to establish venue, and therefore Petitioner's first claim for habeas relief lacks merit.

**B**

Petitioner contends that he was denied his right to a public trial because testimony was taken during the first day of the trial which concluded at 5:41 p.m. Petitioner contends that the Oakland County Circuit Courthouse closes 5:00 p.m. every business day, and that the doors are locked to the public. Petitioner asserts that he was thereby denied his right to a public trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

Petitioner's claim lacks merit because he presents no evidence, aside from his assertion, that the courthouse was actually closed to the public after 5:00 p.m. on the first day of his trial.

There is nothing in the transcript that suggests the courthouse was closed to the public during Petitioner's trial. Furthermore, the trial court found otherwise. The trial court addressed this factual issue in its Opinion and Order denying Petitioner's motion for relief from judgment:

> The court takes judicial notice of the fact that the courthouse doors are not locked until 6:00 p.m. After hours, there is a security guard who admits people for weekend and evening proceedings. Merely because a witness was on the stand after 5:00 p.m. does not mean that the public was not allowed in the courtroom. Accordingly, Defendant has failed to demonstrate that the court excluded persons from the courtroom, and he is not entitled to relief on this ground.

August 20, 2007 Op. and Order 3.

In a federal habeas corpus action, a determination of a factual issue by a state court is presumed correct, unless rebutted by the petitioner with clear and convincing evidence. 28 U.S.C. § 2254 (e)(1). Petitioner offers no evidence, aside from his assertion, that the trial court's finding was incorrect. Petitioner has therefore failed to carry his burden of proof on his second habeas claim.

## C

For his third claim for habeas relief, Petitioner asserts that the prosecution refused to provide him with certain photographs of the victim prior to trial, and that this deprived him of his right to due process and a fair trial. Petitioner argues this refusal was a violation of his rights as established by *Brady v. Maryland*, 373 U.S. 83 (1963).

Following the assault, Bradford's injuries were photographed. Prior to trial, the prosecution delivered to the defense 29 pages of photographs of the injuries, but did not send three photographs taken by Barton and one photograph taken by the Pontiac police. In the letter accompanying the discovery material, the prosecution stated that the four photographs were not included because they were "revealing," but that the photographs were available for viewing at any time.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  To establish a violation under *Brady*, a petitioner must show (1) the prosecution suppressed evidence; (2) that the suppressed evidence was favorable to him, either because it was exculpatory or because it was impeaching; and (3) that the petitioner was prejudiced by the non-disclosure.  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Petitioner has not demonstrated a right to habeas relief with this claim because he has failed to establish any of the *Brady* elements.  First, the record shows that the photographs at issue were not suppressed.   The prosecutor's letter made the defense aware of the existence of the photographs and offered the opportunity to view them at any time.  Second, there is no evidence that the photographs were either exculpatory or impeaching.   The record shows that the photographs were of abrasions to Bradford's upper thigh and bruising to her breasts, which confirm her account.   Finally, there is no evidence that Petitioner was prejudiced by the prosecution's failure to make copies of the photographs and give them to Petitioner prior to trial. Petitioner's third habeas claim lacks merit.

**D**

Petitioner's fourth habeas claim is that the prosecution called two surprise witnesses — Bradford and Nurse Bonnie Barton — without endorsing them prior to trial.  He contends that he was denied a fair trial as a result.  Petitioner claims that he was unaware that Bradford would be testifying and that, if he had known she would testify, he would have accepted a plea bargain that had been offered by the prosecution.  Petitioner also alleges that had he known the prosecution would call Bonnie Barton as an expert witness, he would have retained his own expert to testify

that non-consensual sex would have injured Bradford's vaginal area.  Petitioner asserts that the prosecution violated its duty under Michigan law to send the defendant, no less than thirty days prior to trial, a list of witnesses the prosecution intended to produce at trial.  *See* Mich. Comp. Laws 767.40a(3).  Petitioner, however, does not cite any federal law that requires a prosecutor to endorse witnesses prior to trial or that holds the failure to do so is a violation of due process.

To the extent that Petitioner is arguing that Michigan law creates an obligation on the part of the prosecutor to endorse witnesses prior to trial, such a claim is non-cognizable in this habeas proceeding.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  A federal court cannot issue a writ of habeas corpus on the basis of "a perceived error of state law." *Pulley*, 465 U.S. at 41.

There is no support for Petitioner's contention that the witnesses were a surprise to him or his attorney, aside from his unsupported statement in his petition.  The general information and witness list, dated March 18, 2005, listed Bradford as a witness that might be called at trial.  The first-amended general information and witness list, dated April 29, 2005, listed Bradford as a witness that might be called at trial, as well as "any and all Haven Start personnel for the treatment of Sandra Renee Bradford on or about 2-8-05."

Further, Barton's report was produced to the defense during discovery.  The prosecution told the court during *voir dire* that it would be calling Barton and Bradford to testify, and Petitioner's trial counsel did not object on the grounds of surprise.  Finally, Petitioner's trial counsel extensively cross-examined both witnesses, suggesting that he was prepared to have them testify.  Petitioner has not established facts supporting his claim that he was surprised by the witnesses, and his fourth habeas claim therefore lacks merit.

**E**

Petitioner's fifth habeas claim asserts that his due process rights were violated because the trial court admitted into evidence inaudible and insufficiently authenticated audiotapes of conversations he had with the victim while in prison.

Petitioner again relies exclusively on Michigan law to support his argument. Noted above, habeas relief is not available for perceived errors of state law. *Pulley*, 465 U.S. at 41. Furthermore, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a [federal] constitutional violation." *Clemmons v. Souders*, 34 F3d 352, 357 (6th Cir. 1994). The finding of the trial court that the audiotapes were sufficiently authenticated and admissible as a matter of Michigan law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Petitioner's assertion that the tapes were inaudible is also not supported by the record. Neither Petitioner's counsel nor the jury challenged the audio quality of the tapes when the judge inquired whether the tape could be heard. Petitioner offers no evidence, beyond his assertion in his petition, that the tapes were inaudible or of poor quality. Without factual support in the record, such an assertion does not meet Petitioner's burden of showing a violation of his constitutional rights. This claim is also meritless.

**F**

Petitioner's sixth habeas claim is that his due process rights were violated because the prosecution failed to list all known *res gestae* witnesses, as required by Mich. Comp. Laws 767.40a. Specifically, Petitioner argues that Officer Reed testified that he interviewed three of

- 13 -

Bradford's neighbors, but did not list them as *res gestae* witnesses. Petitioner asserts that if the prosecution had listed these neighbors as *res gestae* witnesses, as required by the Michigan statute, the witnesses could have been called by the defense and would have undercut Bradford's testimony because they did not see Petitioner do a dance in the hall and did not hear Bradford scream for help.

Again, this claim is not cognizable on habeas review. Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Furthermore, as a factual matter, Petitioner lived in the apartment in which the assault took place; he had the ability to find out the names of the neighbors outside of discovery, and therefore cannot show that he was prejudiced by any failure of the prosecution to list the neighbors' names as *res gestae* witnesses. Petitioner's sixth habeas claim is meritless.

## G

Petitioner's seventh claim for habeas relief asserts that he was denied due process, his right to a fair trial, and was ultimately coerced into waiving his right to testify by questions posed by the prosecutor concerning his use of illegal drugs.

During Bradford's direct examination, the following exchange took place between the prosecutor and Bradford:

Q: Did you think he had been under the influence of anything

A: Yeah.

Q: What?

A: Marijuana.

Q: Did you think he had been drinking?

A: No.

Q:  What made you think he was – had been smoking?

A:  Because that's what he did.

July 21, 2005 Trial Tr. 74–75.

Petitioner asserts that the admission of this testimony violated Michigan Rule of Evidence 404(b), which provides that evidence of other crimes, wrongs and acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character. Petitioner also asserts that the admission of this evidence damaged his credibility and coerced him to waive his right to testify.

Petitioner's claim based on the violation of the Michigan Rules of Evidence is not cognizable. *Pulley*, 465 U.S. at 41 (habeas relief not available on the basis of "a perceived error of state law"). Furthermore, the question was proper as a matter of Michigan law because it did not seek to ask about Petitioner's general character but sought evidence concerning Petitioner's demeanor and state of mind during the crime. Petitioner has not established a right to habeas relief on this claim.

**H**

Petitioner's eighth claim for habeas relief asserts that he was denied the right to counsel because of the late appointment of his trial counsel and because his trial counsel was ineffective.

Petitioner argues that he was constructively denied counsel at his preliminary examination because his trial counsel was appointed only two days before the preliminary examination. Petitioner cites in support of this proposition *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006). In *Morris*, the Sixth Circuit held that a criminal defendant was constructively denied counsel when he was appointed an attorney the day after his arraignment and met with her for the first time immediately before a "pre-preliminary examination." Additionally, during that

- 15 -

initial meeting, the defendant's attorney advised him of a state plea offer but incorrectly estimated his federal guidelines range as 62 to 68 months, when in fact it was 90 to 97 months if he pled guilty or 101 to 111 months if he did not.  Immediately after this meeting, the prosecution made a plea offer, and the state judge informed Morris that if he declined he would be referred to federal court to answer charges that could result in a more severe sentence. Morris was not able to discuss his options privately with his attorney, who at any rate had no experience practicing in federal court, had no knowledge of the strength or weakness of the case against him, and had no opportunity to investigate or interview witnesses.  Morris rejected the state's plea offer and he was later charged in federal court.  The federal court held that, under the circumstances, Morris was constructively denied counsel at a critical stage of the criminal proceedings against him.  *Id.* at 602.

The *Morris* case addressed an unusual set of facts in which the criminal defendant had access to a lawyer, but where the ability of the lawyer to assist the defendant was severely limited by the circumstances.  Petitioner's circumstances are materially different than *Morris*. The mere fact that an attorney was appointed two days before the preliminary examination has never been held to constitute a constructive denial of counsel.  *Cf. Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989) (defense attorney's failure to interview defendant until night before trial for only 30–45 minutes did not establish constructive denial of counsel). Generally, a petitioner cannot sustain a claim for ineffective assistance of counsel unless he shows both that his counsel was deficient, and that any deficiency prejudiced his defense.  *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007); *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003).  Deficient performance requires demonstrating that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*,

- 16 -

466 U.S. at 687.  Prejudice requires showing a reasonable probability that the result of the proceeding would have been different had counsel not performed deficiently.  *Id.* at 694. Petitioner has not shown that he was prejudiced in any way by the appointment of counsel two days before the preliminary examination.

Petitioner also asserts that his trial counsel was ineffective because he (1) failed to ensure that the prosecution disclosed *res gestae* witnesses, (2) failed to ensure Petitioner received a public trial, (3) failed to object to the prosecutor's non-disclosure of the photographs of the victim, (4) allowed the inaudible and insufficiently authenticated audiotapes of his conversations with the victim, (5) failed to prevent the prosecutor from eliciting evidence about his illegal drug use, (6) failed to move for a directed verdict on the grounds of insufficient evidence, (7) failed to request a jury instruction on the ways to consider the expert testimony of Bonnie Barton, and (8) failed to object to prosecutorial misconduct.

Petitioner's first five claims of ineffectiveness merely restate his habeas claims, which as discussed above, lack merit.  His sixth claim of ineffectiveness — that his trial counsel failed to move for a directed verdict — lacks merit because the victim's testimony was itself sufficient evidence to sustain the conviction for first degree criminal sexual conduct.  Petitioner's seventh claim of ineffectiveness, that trial counsel failed to request an instruction on the use of expert testimony with regard Bonnie Barton, fails because Barton was a fact witness, not an expert witness, and testified based on her personal knowledge.   Petitioner's eighth claim of ineffectiveness, his trial counsel's failure to object to prosecutorial misconduct, lacks merit because the Michigan Court of Appeals found that the prosecutor did not commit misconduct and therefore the failure of Petitioner's trial counsel to object was not deficient.  *See People v. Wilson*, No. 265455, 2007 WL 521248 (Mich. Ct. App. Feb. 20, 2007).

Petitioner has not established that he was constructively denied counsel or that his trial counsel made errors serious enough to affect the reliability of the trial.  Petitioner has not established a right to habeas relief on his claim of denial of counsel.

## I

For his ninth claim for habeas relief, Petitioner alleges that the cumulative effects of errors at his trial rendered his trial fundamentally unfair. Claims of cumulative error are not cognizable on habeas review. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

## J

Petitioner's tenth claim for habeas relief asserts that his appellate counsel was constitutionally ineffective because he failed to raise Petitioner's first eight habeas claims on direct appeal.  As discussed above, none of Petitioner's habeas claims would have merited relief even if appellate counsel had raised them on direct appeal, and therefore Petitioner's appellate counsel was not ineffective.

## IV

Because none of Petitioner's claims for relief have merit, the Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.  *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or incorrect.  *Id.* at 484.

For the reasons stated above, the Court will deny petitioner a certificate of appealability because reasonable jurists could not find this Court's assessment of petitioner's claims debatable or wrong.

**V**

Accordingly, it is **ORDERED** that Petitioner's petition for a writ of habeas corpus is **DENIED** with prejudice.

It is further **ORDERED** that the Court **DECLINES** to issue a certificate of appealability.

It is further **ODERED** that the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal because an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Dated: February 28, 2013                                    s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail and upon Gerald Wilson #300327, Earnest C. Brooks Correctional Facility 2500 S. Sheridan Dr. Muskegon Heights, MI 49444 by first class U.S. mail on February 28, 2013.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS